**SIGNED THIS: November 4, 2013**

_____

**Gerald D. Fines**
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KEVIN EUGENE DAVIS and | ) | Bankruptcy Case No. 11-91937 |
| EMILY TUCKER DAVIS, | ) | |
| | ) | |
| Debtors. | ) | |
| | | |
| EDGAR COUNTY BANK & TRUST | ) | |
| CO., d/b/a PROSPECT BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary Case No. 12-9037 |
| | ) | |
| KEVIN EUGENE DAVIS and | ) | |
| EMILY TUCKER DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

<u>OPINION</u>

This matter having come before the Court on a Motion to Strike Count II of Plaintiff's

Amended Complaint filed by the Defendants; the Court, having heard arguments of counsel,

reviewed written memoranda of law submitted by the parties, and being otherwise fully advised

in the premises, makes the following findings of fact and conclusions of law pursuant to Rule

7052 of the Federal Rules of Bankruptcy Procedure.

The Defendants' Motion to Strike is brought pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, making applicable Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  In ruling upon this Motion, the Court must accept the factual allegations of the Amended Complaint as true and draw all reasonable inferences in the Plaintiff's favor.  In re Fleming Packaging Corp., 370 B.R. 774 (Bankr. C.D. Ill. 2007).   Dismissal of Count II of the Plaintiff's Amended Complaint is unwarranted unless it is beyond doubt that the Plaintiff can prove no set of facts which entitle it to relief.  See:  Kennedy v. National Juvenile Detention Ass'n., 187 F.3d 690 (7th Cir. 1999).  The decision on the Plaintiff's Motion requires a test of the sufficiency of the Plaintiff's Amended Complaint and is not a decision on the merits.  See:  Gibson v. City of Chicago, 910 F.2d 1510 (7th Cir. 1990).

Count II of the Plaintiff's Amended Complaint is brought pursuant to 11 U.S.C. § 523(a)(2)(A), which states:

> (a)     A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -

> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

The plain language of § 523(a)(2)(A) does not require that the debtor himself or herself commit the fraud or otherwise share in the culpable conduct.  All that the statute requires is that the debt itself be "for money, property, or services, or an extension, renewal, or refinancing of credit" that was obtained by "false pretenses, a false representation, or actual fraud."  The Supreme Court in United States v. Ron Pair Enters., 489 U.S. 235 (1989), held that: "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  Under this standard, a reading of the plain language of § 523(a)(2)(A) reveals no requirement that a debtor

2

actually needs to be found to have directly committed the fraud giving rise to a debt in order for that debt to be non-dischargeable.  This interpretation is consistent with the Supreme Court's instruction on interpretation of § 523(a)(2)(A) in Cohen v. de la Cruz, 523 U.S. 213 (1998), in which the Court stated that:  "Once it is established that specific money or property has been obtained by fraud, 'any debt' arising therefrom is excepted from discharge."

While there are no decisions on point in the Seventh Circuit, the Fifth Circuit, in Deodati v. M.M. Winkler & Associates, 239 F.3d 746 (5th Cir. 2001), interpreted the Supreme Court's Cohen decision as an instruction that courts should not go beyond the plain language of the statute and read requirements into the statute that are not present.  The Fifth Circuit held that, "whether the debt arises from fraud is the only consideration material to nondischargeability."  See:  M.M. Winkler, 239 F.3d at 749.  Also see:  Casablanca Lofts, LLC v. Abrham, 436 B.R. 530 (N.D. Ill. 2010).

The Fifth Circuit's interpretation of § 523(a)(2)(A) does not conflict with bankruptcy policy.  While a debtor's discharge is a fundamental component of the "fresh start" that animates bankruptcy policy, various exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress that the creditor's interest in recovering full payment of debts in these categories outweighs the debtor's interest in a complete fresh start.  See:  Cohen, supra, at 222.  "In other words, Section 523(a)(2)(A) is not designed to protect debtors; rather it is designed to protect the victims of fraud."  Casablanca, supra, at 536, citing In re Quinlivan, 434 F.3d 314 (5th Cir. 2005).  Additionally, the maxim that "exceptions to dischargeability are to be construed narrowly in favor of the debtor . . . cannot overcome the plain language that Congress used to define exceptions to dischargeability."  Deodati, supra, at 751.  The plain language of the statute indicates that Congress intended to protect defrauded creditors from discharge.  See:  Grogan v. Garner, 498 U.S. 279, at 287 (1991).

In addition to concluding that § 523(a)(2)(A) does not require a debtor's action by its plain meaning, this Court also finds that fraudulent conduct can be imputed to the debtor in various

3

factual scenarios. Courts in this District have held that a principal can be held responsible for the fraudulent acts of an agent, even when the principal has no knowledge of the fraud. See; In re Smith, 98 B.R. 423 (Bankr. C.D. Ill. 1989); In re Tayeh, Case No. 09-70050, 2012 WL 162033 (Bankr. C.D. Ill. 2012) citing Abrham, supra, at 537. In Smith, this Court found that the owner of a used-car dealership was held to have non-dischargeable liability to a dealership customer for the fraudulent conduct of a salesman. This Court held that the debtor/owner of the business, "did exercise control over Bob Smith because the license was in [debtor's] name. She was the only person authorized to sign checks, and she actually enabled Bob Smith to operate the business." Smith, supra, at 416.

In this case, the Defendants argue that this Court's decision in Smith and other cases like it are not applicable in that the Debtors/Defendants were not in a partnership, but were rather in a member-managed L.L.C. The Debtors/Defendants argue that there cannot be any imputation of fraud between the members of an L.L.C. as there is no agency relationship as found between partners in a partnership.

In this case, the Debtors/Defendants each owned 25% of a member-managed L.L.C. which was the company used by fellow members, Chris and Casey Rapson, to perpetrate the alleged fraud. Pursuant to 805 ILCS 180/15-1(a), each member of the L.L.C. had equal rights in management and conduct of the company's business. Thus, this Court can envision a scenario, where, even if the Rapsons were not acting as agents of the Debtors/Defendants when they committed the alleged fraud, the debt in question could be non-dischargeable as a result of the Debtors/Defendants being culpable under Federal Bankruptcy law for the acts of their fellow member-managers. There is no question that, under Illinois law, corporate officers or members of an L.L.C. are only personally liable for their own fraudulent conduct. The issue of whether a debt owed by a debtor is dischargeable under the Bankruptcy Code is determined by Federal Bankruptcy law. See: In re Amari, 483 B.R. 836 (Bankr. N.D. Ill. 2012). The specific issue of whether fraud can be imputed from one L.L.C. member-manager to another has not been

4

addressed in the Seventh Circuit. Although the imputation of fraud from one member-manager of an L.L.C. to another has not been specifically addressed in this Circuit, there is a long history of imputation of fraud from one partner to another for the purpose of denying discharge of a debt. In Strang v. Bradner, 114 US. 555 (1885), the Supreme Court held that an innocent partner would be liable for the purposes of denying discharge of debt arising out of another partner's fraud. The Supreme Court's decision in Strang was applied by the Fifth Circuit in In re Luce, 960 F.2d 1277 (5th Cir. 1992), and also in M.M. Winkler, supra, at 749, in which the Fifth Circuit found that § 523 applies even more directly to innocent partners than the statute in Strang, since now the "bankrupt" need not perpetrate the fraud. Other Circuits that have addressed the issue have continued to apply the holding from Strang. See: In re Ledford, 970 F.2d 1556 (6th Cir. 1992); In re Reuter, 686 F.3d 511 (8th Cir. 2012); and In re Tsurukawa, 287 B.R. 515 (9th Cir. B.A.P. 2002).

Imputation of fraud from one L.L.C. member-manager to another is consistent with the law imputing fraud from one partner to another. Members of a member-managed L.L.C. are similar to partners in a partnership in that each member also is a manager and has equal rights in the management and conduct of the company. See: Federalpha Steel LLC Creditors' Trust v. Fed. Piper & Steel Corp., 368 B.R. 679 (N.D. Ill. 2006). This is the rationale underlying decisions imputing fraud from one partner to another. See: Abrham, supra, at 537, in which the Court held that, "the congressional policy behind Section 523(a)(2)(A) is meant to discourage a partner from taking an 'ostrich' approach with regard to monitoring another partner's activities." citing Quinlivan, supra, at 319, and Deodati, supra, at 751. As stated above, § 523(a)(2)(A) is not designed to protect debtors, but rather it is designed to protect the victims of fraud. See: Abrham, supra, at 536. Imputation of fraud serves the vital function of § 523(a)(2)(A) of fraud prevention by creating incentives for a debtor to control or monitor the conduct of his business and associates. In this case, as between the Debtors/Defendants and the Plaintiff, the Debtors/Defendants were in a better position to have ordered their affairs to prevent the alleged

5

fraud of the Rapsons.  This Court finds that imputing fraud from one L.L.C. member-manager to another is consistent with the cited precedent and with the policy considerations at issue.

As discussed above, the issues before the Court in this matter are not being decided on the merits.  The only issue at hand is the sufficiency of Count II of the Plaintiff's Amended Complaint pursuant to 11 U.S.C. § 523(a)(2)(A).  Whether or not the fraud of the member-managers, Rapsons, will be imputed upon the Debtors/Defendants in this adversary proceeding depends on the facts that will be adduced at trial.  The facts may reveal that the Debtors/Defendants should not be held culpable for the alleged fraudulent acts of the Rapsons.  However, at this point, it is equally possible that, despite the L.L.C. structure of the business entity an agency relationship existed between the Rapsons and the Debtors/Defendants.  The answers to those questions cannot be determined until a trial is held in this matter.  As such, the Court finds that, for the purpose of ruling under the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure, Count II of the Plaintiff's Amended Complaint is sufficient to state a cause of action and that the Debtors/Defendants' Motion to Strike Count II of the Plaintiff's Amended Complaint should be denied.

###